Let's call the next case, please. Case number 080721, People v. Farnley Floyd. Please stand and hold on for a minute. Please step up and identify yourselves. Good morning, Your Honors. My name is John Coltsy. I represent the appellant in this case, Mr. Bernois Floyd. Say that again, John. John Coltsy, K-O-L-T-S-E. Eve Riley, representing the people in the state of Illinois. What is your name? Eve Riley. Eve Riley. All right. You may proceed. Your Honors, at this time I'd like to reserve three minutes for my rebuttal. Very well. I'd like to concentrate my argument here on issues two and three of the brief,  as well as the trial court's admission and state's subsequent use of other crimes evidence. Your Honors, this case involves the quantum of evidence needed to establish whether an individual possesses a controlled substance with attempts to leather and further displays a substantial prejudice that can result when a trial court fails to properly limit the state's use and introduction of other crimes evidence. Here, the state used Mr. Floyd's possession and single delivery of a lookalike substance, both uncharged offenses at trial, to argue that he was a dishonest professional drug dealer in order to prove that he had the intent to deliver a small amount of cocaine he possessed, which was an entirely different substance than the other crimes evidence. Carrying the issue of reasonable doubt, the state failed to prove that Mr. Floyd had an intent to deliver the small amount of cocaine he possessed. First, examining the probative value of the state's evidence regarding Mr. Floyd's single transaction that involved lookalike heroin. Where Mr. Floyd possessed two distinctly different types of substances that were packaged differently and packaged separately, the evidence of only one transaction involving lookalike heroin is insufficient to establish an intent to deliver actual cocaine. Additionally, the state failed to prove other factors that are probative of intent to deliver. Here, the state failed to prove that Mr. Floyd engaged in any previous drug activities or transactions. First, Officer Goodwin didn't testify that Mr. Floyd ever advertised any drug sales. He never stood on the corner yelling, blows or rocks to indicate that he wanted to sell the actual cocaine he possessed. Furthermore, Mr. Floyd was found in only possession of $5. And the state introduced evidence that that was the going street rate for the lookalike heroin that he sold. And that would be evidence to show that he didn't engage in any prior transactions before Officer Goodwin came to the scene and arrested him. Further, there was no testimony from Officer Goodwin that Mr. Floyd was in an area that was known for narcotics sales or a high-traffic, high-crime area. Moreover, the state failed to present any evidence that Mr. Floyd re-established his position where he previously sold drugs to, again, sell the items that he possessed. As the discourse were in People v. Bush, the Illinois Supreme Court acknowledged that known evidence that a previous drug transaction involved a known substance does not prove an intent to deliver that substance at a later date. You have to look to other evidences, other evidence of intent to deliver. And none of those, as I mentioned before, were present here. And that's especially true in this instance. The fact that he delivered lookalike heroin does not prove that he intended to deliver real, actual cocaine because we have different substances packaged separately and in different containers. Doesn't that infer that it's not for personal use, that he's in the business, he's got different types of substances, albeit one is real and one is a lookalike? Your Honor, the quantity and the amount of substance an individual possesses can show an intent to deliver. But here, the quantity that Mr. Floyd possessed was relatively small, very small, actually. The state initially failed to test the contents of the other three clear plastic bags that Mr. Floyd possessed that were actual cocaine. So in reality, the state only effectively proved that he possessed .18 grams of cocaine in a clear plastic bag. You wouldn't expect somebody dealing in controlled substances to have their entire stash with them, would you? There are times when they could have drugs placed elsewhere. However, in this case, there's no evidence that there was another stash. There's no evidence that Mr. Floyd went under a log or went under a rock and picked out his bag. What about the paraphernalia? He has Ziploc bags and tin packages that are hidden in his sleeve. Isn't that of some significance in determining intent? That is of some significance in determining intent, but I would argue that it does not overcome the inference of the amount of drugs he possessed and the manner in which they were packaged. You have one package of cocaine, relatively small weight, .18 grams, very small weight, provides the inference, as this Court noted in other cases, in people v. Nixon, the Third District noted that four packets containing 6.6 grams of cocaine alone is not indicative of intent to deliver. It's more indicative of personal use. And we have far less amount of controlled substance here, and then we also have the issue of the lookalike substances, where there's two separate items. There is an inference that Mr. Floyd intended to deliver the lookalike heroin in the light green plastic bag because he previously delivered that. However, once you move down the chain and you get to the lookalike heroin and the tinfoil packets, that inference is reduced. That inference is further reduced when you get to an entirely different substance that is actual cocaine that he may be keeping for his own personal use. He may sell the lookalikes only. Or the reversal, that he's just sucker punching the dummy that bought it. There is that possibility, but we're looking specifically here at the evidence of circumstantial evidence that the state actually proved. And as I mentioned before, no indication of prior sales. No indication of advertising. No indication of subsequent sales. And a relatively small amount of money that admittedly involved one transaction. And this is precisely the inference that in people v. Bush the Court looked at to say, well, what do we have here? Even though we knew he delivered a lookalike substance previously to Mr. Stevens, the co-offender, we can't, from that fact alone, create the inference that he intended to sell. And your honors are correct. He did continue, he had on his possession additional drugs. And that does provide a slight inference, but not enough inference to overcome the small quantity and his lack of other activities to indicate an intent to deliver. Your honors, turning to the introduction of the other crimes evidence itself. Here, the trial court abused its discretion when it failed to place any limitations on how the state can introduce and argue the other crimes evidence. Mr. Floyd was indicted under the Lookalike Substance Control Substances Act, but he was not charged. The state now let those two counts before going to trial. At that time, the defense attorney made a motion in limine to prevent the state from offering any evidence regarding those because it was more prejudicial than appropriate. The court at that time, the state argued in kind that it should go to his intent to deliver, but the court never specifically told the state, this is the purpose it's coming in for. It simply said, it can come in. And that's where it ended. From there, the state brought it in. And there was no contemporaneous written, or actually oral instruction to the jury for the purpose of this evidence before Officer Goodwin testified. But the defendant's the one that failed to tender an alternative instruction. The defendant did fail to tender an alternative instruction here. He, in fact, when he requested that the evidence not be admitted, the court offered to present a limiting instruction only at the end of evidence. So in some sense, that cut off his avenue of asking for contemporaneous limiting instruction. But cases have also held that, specifically, People v. Denny, that when a trial court may have a sui sponte duty to issue a limiting instruction, or contemporaneous limiting instruction, one evidence, it can be substantially prejudicial. Other crimes' evidence can be substantially prejudicial. And here, it's clear that this evidence was substantially prejudicial to Mr. Floyd's case. In People v. Bedoya, this court specifically stated that, when reviewing a trial court's decision to admit other crimes' evidence, you have to balance the probative value of the evidence versus the manner in which the evidence was presented, introduced, and actually argued at trial. So we've discussed earlier in Issue 1 regarding the probative value. What about Kibbins at the state sites? How am I Kibbins? In terms of, I'm not familiar specifically. The modus operandi. The modus operandi. So his plan in selling drugs. Initially, the trial court only decided that it could be admitted for the purposes of intent. If this court feels that modus operandi is relevant, it's clear here that the state's argument and the way the evidence was used went far beyond modus operandi. Like, as I mentioned before, the probative value of this evidence was slight, especially when you get to the intent to deliver the actual cocaine. They're trying to piggyback his actual delivery of a lookalike substance onto the intent to infer an actual intent to deliver the same lookalike substance packaged differently, and then piggyback that onto his intent to deliver actual cocaine packaged differently, held separately. Now, from the very first moment that the jury received this evidence, there was a misstatement of evidence. In opening statements, the state told the jury that you're going to hear evidence that the defendant possessed actual heroin. Now, that was a misstatement of the evidence. Defense counsel rightly rejected it, and the trial court overruled that objection, indicating, despite the fact that they had just previously had a conversation regarding the fact that there's lookalike substances, there's only lookalike heroin. So from the get-go, the jury is already going to be confused about this evidence. What is the actual substance? What isn't? Beyond that, as I mentioned, the trial court failed to, admittedly, issue a sua sponsa limiting instruction, which in this case, due to the fact that, one, the evidence was closely linked to the actual cocaine, but two, that the state had previously misstated the evidence and the trial court had let that go uncorrected, would have been a good way to let the jury know specifically what purpose they could use it, intent or even modus operandi. But when we get to how the state argues the evidence in this closing argument, it's clear that they go beyond either intent or modus operandi. They didn't argue that Mr. Floyd was simply out there and decided to sell drugs. They argued that he was a dishonest professional drug dealer, and they argued that he was spreading poison. They specifically identified him, saying that he pushes poison, and under those circumstances, as the fourth district noted in People v. Porter, introduction of evidence that an individual is a pusher to establish previous sales of drugs goes beyond intent. It goes far beyond the purpose, the very limited purpose of other crimes' evidence. It goes to show that he's a bad person, and it really allows the jury to convict the defendant solely because they think he's a bad person. It allows the jury solely to think he has intent to deliver because this is his job. He goes out there and delivers drugs. He is a bad drug dealer, and that's exactly what happened in this case. Now, specifically regarding the issue of whether or not it goes to modus operandi, the state certainly went beyond the bounds of modus operandi when it made those arguments.  I would ask that this Court, either under the reasonable doubt argument regarding intent to deliver, reverse Mr. Floyd's conviction, or under the second, if this Court believes the evidence was sufficient to prove intent to deliver, remand for a new trial, instructing the trial court to limit the introduction of the other crime's evidence so that it does not get used for the exact manner it was used in this case to prove that he was a dishonest drug dealer. Thank you, Your Honor. Thank you. May it please the Court? May it. When looking at the evidence in a light most favorable to the state, a rational jury could find all the elements of this crime beyond a reasonable doubt. Here, the officer observed defendant engage in a transaction. He saw him remove a packet from his left sleeve and exchange it for U.S. currency. Officer Goodwin then approached the defendant who fled, evidencing his consciousness of guilt. The co-offender also fled. They're ordered to stop. They do not. They proceed down a gangway. Officer Brown cuts him off at the other end, draws his weapon, orders them to stop. At this point, the co-offender ditches his purchase and stops. Not the defendant. He keeps right on going. He punches Officer Brown in the chest, resisting arrest, further evidence of his consciousness of guilt, and resists arrest to the point where he injures the officer. The people maintain that this evidence, when looked at in a light most favorable to the state, proves defendant guilty beyond a reasonable doubt. The fact that the lookalike substance was contained in the left sleeve along with the cocaine and they were all in Ziploc bags evidence his intent to sell the cocaine. With regards to the other crimes evidence, the other crimes evidence was properly admissible to show a continuing narrative of events. This was not, these are not separate acts. This is a continuing intertwined series of events that's occurring. And as the court held in Harvard. Was that the argument the state adopted below? No. The state made the argument below that it was admissible to show intent, which it was, and that was a proper basis for admissibility, and this court should uphold it for that reason. But also. If you didn't make that argument in the trial court, how can you make the argument here? Well, this court can affirm on any basis, and that is also a proper basis for the admissibility of the other crimes evidence. The fact that these crimes are so intertwined, it necessitates the admissibility of the other crimes evidence in order to explain why the officers even approached the defendant in the first place, and why he fled, and why they pursued, et cetera. So, but in addition to being admissible as a continuing narrative, it was also admissible to show the defendant's intent. Clearly, the defendant, the officer observes the defendant out there engaging in a transaction, removing items from his left sleeve. There's no question that there is an item in his left sleeve that is identical to the Ziploc bag that is found, that the co-offender ditches, and in the same left sleeve, he also has the cocaine. So, for these reasons, the other crimes evidence were admissible to show the defendant's intent to sell the cocaine. Now, as far as defendants claim that the court had a sua sponte due date to issue a limiting instruction regarding the other crimes evidence, it does not. Even the case cited by Defendant Indeni, the court says, although the court's not required to give an instruction sua sponte, it would have limited the prejudice. So there's no question there is no duty on the court to issue a contemporaneous sua sponte limiting instruction. The jury was given a limiting instruction at the end of the evidence instructing them how they could consider the other crimes evidence, and that they could do so for intent. When was the other crime instruction given? At the end of the evidence. At the end of the case. After arguments? Yes. I believe so. Well, I was a little confused as to whether it was given when the chemist testified, or whether it was given, you know, during the evidence, or given at the time the jury was instructed immediately before. I believe it was at the time the jury was instructed, Your Honor. Nobody asked for a contemporaneous sua sponte? No, nobody asked for one. Okay. With regards to the State's argument, the State properly commented on the argument that was admitted at trial, and characterized a defendant as a drug dealer based on the facts in this case, which distinguish it from the Porter case that the Defendant cites, where the addict informer characterized the defendant on a pusher based on his prior interactions with the defendant. Here, the prosecutor's argument is a proper inference based on the evidence, and therefore was a proper argument and did not prejudice the defendant in any way. For these reasons and all the reasons stated in our brief, we respectfully request that you affirm the Defendant's conviction. Thank you. I'd like to address two points in rebuttal, regarding if this Court chooses to uphold the decision based on a continuing narrative event, uphold the introduction of other crimes evidence. It's clear here that the trial court could have taken some steps to limit the introduction of the other crimes evidence, specifically with regard to Officer Goodwin's testimony. Now, Officer Goodwin did explain his process for arresting Mr. Floyd. However, during his testimony, he also was allowed to give his opinion, considering what contents he thought were in the packages, and he specifically referred to each content as suspect heroin, both in the tin and the clear container. Now, when you specifically have other crimes evidence, and it's being limited to be placed in a tent or circumstances of arrest, Mr. Officer Goodwin's opinion as to what's in those contents is not necessarily relevant, and the jury should not have to wait until the forensic scientist comes on later and has to clear up the issue, especially when there's a potential for confusion here, as there was with the State's misstatement of the evidence during the opening statement that the trial court did not correct. Furthermore, regarding the State's distinguishment of Porter, the thrust of Porter was that the prejudicial effect, in light of other crimes evidence being only admitted for an intent or a specific purpose, and that labeling a defendant a pusher goes beyond that. It goes beyond all of those purposes for other crimes intent, and it goes specifically to propensity evidence. It goes specifically to bad character, and akin to Porter and those purposes is what the State's argument here, and the effect of the State arguing that he's a dishonest professional drug dealer, that he's pushing poison on the streets. Thank you. Thank you. The matter will be taken under advisement. That concludes the business before the court, and the court will be adjourned.